# United States District Court

## HAWAII

ORIGINAL

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)
725 Kapiolani Boulevard, Apt. 1802
Honolulu, Hawaii 96816

APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT

CASE NUMBER:
Mag No. 03-0281 LEK

I Lori B. Janosko being duly sworn depose and say:

I am a(n)   Senior Special Agent, FDA/OCI   and have reason to believe
          Official Title

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)
725 Kapiolani Boulevard, Apt. 1802
Honolulu, Hawaii 96816

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

APR 1 6 2003

at ____ o'clock and ____ min ____ M.
WALTER A. Y. H. CHINN, CLERK

in the Judicial District of Hawaii
there is now concealed certain property, namely
Apartment is located on the eighteenth floor of the Imperial Plaza. The apartment has two bedrooms, two bathrooms, a living room and a kitchen. The front door to the apartment is off white in color and is affixed with the numerals 1802.

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)
in violation of Title 21, United States Code, Sections 331 and 333(b)

concerning a violation of Title 21 United States code, Section(s) 331 and 333(b)
The facts to support a finding of Probable Cause are as follows:
See attached affidavit

Continued on the attached sheet and made a part hereof.  ☒ Yes  ☐ No

_____
Signature of Affiant

**Sworn to before me, and
subscribed in my presence**

April 16, 2003                    at    Honolulu, Hawaii
Date                                     City and State

United States Magistrate Judge              Leslie E. Kobayashi
Name and Title of Judicial Officer          Signature of Judicial Officer

## AFFIDAVIT

I, Lori B. Janosko, being duly sworn, hereby depose and state:

1.  I am a Special Agent with the United States Food and Drug Administration, Office of Criminal Investigations (hereafter "FDA/OCI") assigned to the Los Angeles Field Office ("LAFO"), San Clemente, California. The Food and Drug Administration is the federal agency charged with the responsibility of protecting the health and safety of the American public under the Federal Food, Drug and Cosmetic Act, Title 21, United States Code (U.S.C.), Sections 301-395, (hereafter referred to as "FD & C Act"). I have been a Special Agent with FDA/OCI since January 1999. Prior to my position with the FDA/OCI, I was employed as a Criminal Investigator with the United States Customs Service (USCS) for approximately 12 years. My duties with the USCS included investigations of, and make arrests for, offenses enumerated in Title 19, United States Code and cross designation to conduct offenses enumerated in Title 21, United States Code. Your affiant has, on many occasions, personally interviewed confidential informants, worked in an undercover capacity and executed search and seizure warrants for evidence.

2. In my current capacity as a Special Agent with the FDA/OCI, I am responsible for conducting criminal investigations relating to violations of (i) the FD & C Act including the smuggling of counterfeit and/or unapproved products, the introduction into interstate commerce of misbranded and/or adulterated products as defined by the FD & C Act, (ii) the Prescription Drug Marketing Act of 1987 (PDMA), (iii) the Federal Anti-Tampering Act (FATA), codified as Title 18, U.S.C., § 1365, and (iv) other statutes of Titles 18 and 21, United States Code, enforced by the FDA/OCI.

During my career as a Special Agent, I have participated in the execution of numerous search and seizure warrants, interviewed confidential informants, and worked in an undercover capacity.

Currently, along with the United States Bureau of Immigration and Customs Enforcement (B.I.C.E.), Honolulu, HI, we are investigating HYO IK CHO (a.k.a. SEON IL KIM) et al. for violations, including, but not limited to the following: 18 U.S.C. § 371 (conspiracy); 18 U.S.C. § 542 (entry of goods by means of false statements); 21 U.S.C. § 331 (introduction of misbranded drugs into interstate commerce); 21 U.S.C. § 353(b) (dispensing a drug without a prescription) and 18 U.S.C. § 2320 (trafficking in counterfeit goods/services).

3.      This affidavit is made in support of an application for the issuance of a search warrant for SEON IL KIM's residence and business as well as employees and business associates, that are the subjects of the current investigation being conducted by the FDA/OCI and B.I.C.E. As set forth in more detail below, there is probable cause to believe that SEON IL KIM and persons operating under his employ have committed and are continuing to commit criminal violations, including, but not limited to, conspiracy to defraud the United States, introduction of misbranded drugs into interstate commerce, and the sale of drugs without a prescription. As set forth in more detail below, there is also probable cause to believe that located at 725 Kapiolani Blvd., Apt 1802, Honolulu, HI and 2250 Kalakaua Ave., 2nd Floor, Space #211, Honolulu, HI, will be fruits, instrumentalities and evidence of violations of 18 U.S.C. §§ 371 and 542 (conspiracy and entry of goods by means of false statements); 21 U.S.C. § 331 (introduction of misbranded drugs into interstate commerce); 21 U.S.C. § 353(b) (sale of drugs without a prescription) and 18 U.S.C. § 2320 (trafficking in counterfeit goods/service).

The 725 Kapiolani Blvd. premises to be searched is further described as:

An apartment located on the eighteenth floor of the Imperial Plaza. The apartment has two bedrooms, two bathrooms, a living room and a kitchen. The front door to the apartment is off white in color and is affixed with the numerals 1802.

The and 2250 Kalakaua Ave. premises to be searched is further described as:

B) A business suite located on the second floor. The front of the business is comprised of glass windows and a glass door. The business is located between Seaside and Kalakaua and is known to be Suite 211.

This affidavit is based on my personal knowledge, prior intercepted packages containing counterfeit Viagra, conversations with other law enforcement personnel, confidential source contact, and review of business records and documents obtained during the course of this investigation.

## RELEVANT STATUTES

4. The mission of FDA is to enforce laws enacted by the United States Congress and regulations promulgated by the agency to protect the health and safety of American consumers. The FD & C Act, 21 U.S.C. § § 301-395, is intended to assure, among other things, that drugs manufactured and distributed within the United States are neither adulterated nor misbranded. This includes assuring that drugs are safely manufactured, processed, and made from appropriate ingredients, and that all labeling and packaging is truthful, informative, and not deceptive.

5. 21 U.S.C. § 321(g)(1) defines a "drug," in relevant part, as (1) any article intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease in man or other animal; (2) any article (other than food) intended to affect the structure or any function of the body; or (3) any article uses as a component of either.

6. Pursuant to 21 U.S.C. § 353(b)(1), some drugs intended for use by humans can be dispensed only upon the valid prescription of a licensed practitioner. Such drugs are known as prescription drugs. A drug is a prescription drug if, among other things, "because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary

to its use, [it] is not safe for use except under the supervision of a practitioner licensed by law to administer such drug" 21 U.S.C. § 353(b)(1).

Viagra related to this investigation is a prescription drug as defined by the FD & C Act.

7. Pursuant to 353(b)(1), a drug is deemed to be misbranded if it is a prescription drug that was dispensed without the written or oral prescription of a practitioner licensed by law to prescribe such drugs (i.e., without a valid prescription).

8. Pursuant to 21 U.S.C. § 352(f)(1), a drug is also deemed to be misbranded if its labeling fails to bear adequate directions for use. 21 U.S.C. § 353(b)(2) allows for certain exemptions from the adequate directions for use labeling requirement if a drug is dispensed via a prescription from a licensed physician. However, this exemption does not apply to "any drug dispensed in the course of the conduct of a business of dispensing drugs pursuant to diagnosis by mail." 21 U.S.C. § 353(b)(2). Thus, drugs dispensed, as in the instant matter, pursuant to an electronic-mail request would not qualify for the exemption and would be misbranded under the FD & C Act.

9. 21 U.S.C. § 331 prohibits the following acts:

a. the introduction or delivery for introduction into interstate commerce of any drug that is adulterated or misbranded. 21 U.S.C. § 331(a);

b. the adulteration or misbranding of any drug in interstate commerce. 21 U.S.C. § 331(b);

c. the receipt in interstate commerce of any drug that is adulterated or misbranded, and the delivery or proffered delivery thereof for pay or otherwise. 21 U.S.C. § 331(c);

d. the alteration, mutilation, destruction, obliteration, or removal of the whole or any part of the labeling of, or the doing of any other act with respect to a drug if such act is done while such article is held for sale after shipment in interstate commerce and results in such article being adulterated or misbranded. 21 U.S.C. § 331(k);

e. the failure to register in accordance with 21 U.S.C. § 360. 21 U.S.C. § 331(p); and

4

f. the sale, purchase or trade of a drug sample in violation of 21 U.S.C. § 353(c). 21 U.S.C. § 331(t).

10. The FD & C Act establishes criminal penalties for doing or causing any of the above-mentioned prohibited acts.

Under 21 U.S.C. § 333(a)(1), any person who violates a provision of 21 U.S.C. § 331 shall be imprisoned for not more than one year or fined not more than $1,000, or both (i.e., a misdemeanor). Notably, this is true even if the act is committed without specific intent. See United States v. Park, 421 U.S. 658 (1975).

Pursuant to 21 U.S.C. § 333(a)(2), if any person commits a violation of 21 U.S.C. § 331 with the intent to defraud or mislead, such person shall be imprisoned for not more than three years or fined not more than $10,000, or both (i.e., a felony).[1]

11. 18 U.S.C. § 371 states, in pertinent part, "if two or more persons conspire to defraud the United States, or any agency thereof, in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years or both."

12. 18 U.S.C. § 542 states, in pertinent part, "whoever enters or introduces, or attempts to enter or introduce, into the commerce of the United States any imported merchandise by means of any fraudulent or false invoice, declaration, affidavit, letter, paper, or by means of any false statement, written or verbal, or by means of any false or fraudulent practice or application shall be fined for each offense under this title or imprisoned not more than two years, or both."

13. 18 U.S.C. 2320 states, in pertinent part "Whoever intentionally traffics or attempts to traffic in goods or services and knowingly uses a counterfeit mark on or in connection with such goods or services, shall, if an individual, be fined not more than $2,000,000 or imprisoned not more than 10 years or both and if a person other than an individual be fined no more than $5,000,000.

## CURRENT INVESTIGATION

14. In July 2002, SAs William Leitner and Lori Janosko, FDA/OCI, were contacted by and met with a cooperating witness in Los Angeles, CA, who alleged that SEON IL KIM was involved in the manufacture and sale of alleged counterfeit Viagra tablets in Honolulu, HI as well

---

[1] As a result of the new federal criminal fines laws set forth in 18 U.S.C. § 3571, the maximum fines appearing in the FDCA ($1,000 for a misdemeanor and $10,000 for a felony) have been superseded. Thus, the maximum fines for violations of the FDCA are for an individual, $100,000 for a misdemeanor and $250,000 for a misdemeanor resulting in death or for a felony; for a company, $200,000 for a misdemeanor and $500,000 for a misdemeanor resulting in death or for a felony.

6

as the export of the Viagra tablets to Japan. The cooperating witness stated s/he had lived in KIM's apartment, located at 430 Lewers St. Apt. #7E, Honolulu, HI, during which s/he observed the following:

> Bags of powder, empty pill containers, labels for Viagra (written in English), blank DHL shipping labels, and a machine to press Viagra tablets.

During the meeting, the cooperating witness provided agents with two (2) alleged counterfeit Viagra tablets that s/he took from Viagra from SEON IL KIM's apartment. The two (2) alleged counterfeit Viagra tablets were sent to Pfizer Inc. laboratories for analysis and found to be counterfeit.

15. In November 2002, SA Janosko, FDA/OCI met with SSA Rick Bratt, B.I.C.E., regarding SEON IL KIM. S/SA Bratt conducted indices checks and determined that KIM had the following package intercepts at the U.S. Customs Service Mail Branch, Honolulu, HI:

> In April 2000, an express mail parcel was returned from Japanese Customs to the U.S. Customs Service Mail Branch that contained two (2) bottles of Viagra. The return address was KIM's and the declaration for the package stated "health food" and "gift."
>
> In February 2001, an express mail parcel was returned from Japanese Customs to the U.S. Customs Service Mail Branch that contained 147 pieces of Viagra pharmacology literature secreted between two (2) pieces of cardboard taped together to resemble a book. Again, the parcel had a return label displaying KIM's address.
>
> In 1997, during contact with the Honolulu Police Department, KIM identified himself as a pharmacist.

16. On November 7, 2003, SA Mark Yamanaka, B.I.C.E, met with the property manager at Waikiki Business Plaza, 2250 Kalakaua Avenue, Honolulu, Hawaii. The property manager informed SA Mark Yamanaka that IL NAM LEE was the owner of WAIKIKI PHARMACY, 2250 Kalakaua Avenue, Suite 211, Honolulu, Hawaii. However, the property

7

manager told SA Yamanaka that he only spoke to SEON IL KIM, manager of WAIKIKI PHARMACY, provided a contact number for him as (808) 381-8812, which he had called and spoke with SEON IL KIM. The telephone number provided matches toll records which identify KIM's contact with YOSHIHIRO KURISHIMA (a known marketer of counterfeit Viagra tablets).

17.   On April 10, 2003, SA Mark Yamanaka, B.I.C.E., and SA William Leitner, FDA/OCI, went to SEON IL KIM's apartment, located at 725 Kapiolani Blvd., Apt 1802, Honolulu, HI. SEON IL KIM consented to an interview with agents during which time he admitted the following:

> From 1997 to October 2002, SEON IL KIM sold Viagra tablets to a customer base in Honolulu, HI and Japan.
>
> SEON IL KIM primarily has a customer base in the tourism industry.
>
> SEON IL KIM stated he sold Viagra tablets from his business address at 2250 Kalakaua, Honolulu, HI.
>
> SEON IL KIM stated that IL NAM LEE was his girlfriend until a couple of months ago. SEON IL KIM also stated that he IL NAM LEE's name to obtain his two vehicles because of his bad credit.

SEON IL KIM had four (4) bottles of Viagra in his apartment which were relinquished to agents because KIM stated he did not have a prescription for the Viagra tablets. SA Yamanaka, B.I.C.E., observed a computer in KIM's residence during the meeting.

18.   During the meeting with agents SEON IL KIM admitted that he had sold approximately 15 bottles of Viagra tablets per month from 1997 through 2002 and the price per bottle was approximately $300.00. KIM stated that customers in Hawaii picked up the Viagra tablets directly from him or he shipped the Viagra tablets to customers.

19.   On April 14, 2003, a package was returned by Japanese Customs to the U.S. Customs Mail Branch facility, Honolulu, HI that contained one (1) bottle of Viagra. The

shipping label declared the contents as "food supplement" and the shipping address was 2250 Kalakaua Ave., which has been identified as SEON IL KIM's business address bearing the name WAIKIKI PHARMACY.

20. On April 11, 2003, a B.I.C.E. confidential source (CS) contacted YOSHIHIRO KURISHIMA and ordered six (6) bottles of Viagra tablets (180 tablets total) which was scheduled for delivery the following week.

21. On April 15, 2003, a meeting was set between a B.I.C.E. confidential source (CS) and YOSHIHIRO KURISHIMA for the purchase of the six (6) bottles of Viagra. A meeting transpired between the CS and YOSHIHIRO KURISHIMA and a third individual later identified as MORAKATSU HORATA. MORAKATSU HORATA delivered the six (6) bottles of Viagra tablets to YOSHIHIRO KURISHIMA. YOSHIHIRO KURISHIMA gave the six (6) bottles of Viagra tablets to the CS in exchange for $1,800.00.

22. YOSHIHIRO KURISHIMA was subsequently arrested and found in his possession was an address book. Within the address book, telephone number (808) 381-8812 was located which is the telephone number of SEON IL KIM. A review of telephone subscriber telephone tolls has revealed numerous telephone calls between SEON IL KIM and YOSHIHIRO KURISHIMA.

23. YOSHIHIRO KURISHIMA provided Viagra tablets to the CS in the past which are alleged to have been ultimately provided by SEON IL KIM. The Viagra tablets provided have been tested by the FDA's Forensic Chemistry Center and were found not to be consistent with authentic Viagra tablets; thus counterfeit.

Based upon the foregoing, my training and experience, and information provided to me by members of the Bureau of Immigration and Customs Enforcement, I have probable cause to believe that the following items and categories of items will be found at the residential locations that are subjects of this application. Based upon the foregoing, I believe that these locations contain evidence and or instrumentalities of criminal offenses in that I believe SEON IL

9

KIM is intentionally selling misbranded pharmaceuticals and/or controlled substances to individuals within the United States and other countries with the intent to defraud or mislead the government and/or consumers. These pharmaceuticals and/or controlled drugs are misbranded as outlined within this application and are considered to be a health risk to those individuals who are consuming them.

The following constitute evidence of the subject offenses in that they relate to and will establish the depth of the criminal activity, document the dispensing of misbranded and violative prescription drugs, and identify potential customers and/or physicians working with SEON IL KIM:

Prescriptions foreign and/or domestic;

Patient sales records for individuals ordering the pharmaceuticals;

Patient records and/or the lack thereof;

Correspondence between SEON IL KIM and principals and pharmaceutical companies engaged in the sale of pharmaceutical and/or controlled drugs;

Employee personnel files and records, non-disclosure contracts; and

Computerized equivalents of the above records;

The following categories of records are evidence in that they will establish the current locations of funds received and spent by this business, officers, and employees as a result of the sale of misbranded drugs;

Bank records, to include all savings and checking accounts, canceled checks, deposit tickets and items, all documentation submitted to financial institutions related to any financial transaction related to SEON IL KIM and principals and computerized equivalents of the above records.

The following categories of items are evidence of or will likely contain evidence of the conspiracies to misbrand drugs, entry of goods by means of a false statements, smuggling, distribution of counterfeit goods:

All telephone records;

Appointment logs and calendars;

10

All rolodexes;

Any pharmaceutical, controlled or non-controlled and any substance deemed to be sold via the Internet that could be violative in nature;

All computers and computerized equivalents that are being utilized within the business;

All shipping records including United States Postal and all other common courier, including Federal Express and foreign postal services

("DOCUMENT" as that term is used herein, means records, notes, letters, correspondence, claims forms, financial records, checks, ledgers, accounting papers, computer printouts, saved e-mail, information on computer hard drive and disk, computer input and output reports, and writings, and any other item of any type that conveys information.)

1. Any and all documents and materials relating to the purchase, sale, shipment, handling, distribution, use, or manufacturing of pharmaceutical and/or controlled drugs, including, but not limited to, bills, invoices, bills of lading, purchase orders, letters, notes, order forms and shipping documents;

n. Any and all property, including, but not limited to, checks, cancelled checks, check registers, ledgers, bank statements, account statements, deposit items, credit card processing equipment, and any other financial papers which relate to the purchase, sale, shipment, distribution, handling, advertisement, use, or manufacturing of pharmaceutical drugs;

o. Any and all telephone records, address books, telephone messages, telephone recordings, records of electronic facsimile or "faxed" transmissions, or other records showing communications with others which relate to the purchase, sale, shipment, distribution, handling, use, manufacturing, or advertisement, of pharmaceutical and/or controlled drugs;

In addition, my training and experience has shown me those individuals and/or businesses typically use computers to facilitate record keeping and to record business transactions. Accordingly, I request that the following be subject to this search and seized as evidence:

Any and all information and/or data stored in the form of magnetic or electronic coding on computer media or on media capable of being read by a computer or with the aid of computer related equipment. This media includes network servers, back-up tapes and diskettes, hard drives, floppy diskettes, fixed hard disks, removable hard disk cartridges, tapes, laser disks, video cassettes and other media which is capable of storing magnetic coding;

11

Any and all electronic devices which are capable of analyzing, creating, displaying, converting, or transmitting electronic or magnetic computer impulses or data. These devices include computers, computer components, computer peripherals, work processing equipment, modems, monitors, printer, plotters, encryption circuit boards, optical scanners, external hard drives, and other computer related electronic devices;

r. Any and all instructions or programs stored in the form of electronic or magnetic media, which are capable of being interpreted by a computer or related components. The items to be seized could include operating systems, application software, utility programs, compilers, interpreters, and other programs or software used to communicate with computer hardware or peripherals either directly or indirectly via telephone lines, radio, or other means of transmission;

The search procedure of the electronic data contained in computers or operating software or memory devices, whether performed on site or in a laboratory, or other controlled environment, may include the following techniques:

- surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files);
- "opening" or cursorily "scanning" the first few "pages" of such files in order to determine their precise contents;
- * "scanning" storage areas to discover and possibly recover recently deleted data;
- * "scanning" storage areas for deliberately hidden files; or
- performing key word searches through all electronic storage areas that are intimately related to the subject mater of this investigation.

This warrant and this search procedure specifically exclude a search of any kind of unopened electronic mail. No search of unopened electronic mail shall be conducted without a separate search warrant supported by probable cause. Appropriate efforts shall be made to minimize the disclosure of records and other information, which are not subject of this warrant.

Within 30 days of the seizure of any computer hardware, I will contact SEON IL KIM or his representative to return such hardware or will provide an update to the Court as to the status of the return of such hardware or of the necessity to retain such hardware as evidence. Appropriate efforts will be made to conduct this search procedure on site, if possible.

I request that a search warrant be issued to search the premises described above and in Attachment B and authorize the seizure of all of the above items.

12

I request that a search warrant be issued to search the premises described above and in Attachment B and authorize the seizure of all of the above items.

_____
Lori B. Janosko
Special Agent
FDA/Office of Criminal Investigations

Subscribed and sworn to before me this __16th__ day of April 2003.

_____
Unites States Magistrate Judge

-13-

## ATTACHMENT A

## DESCRIPTION OF PREMISES

SEON IL KIM's address located at The Imperial Plaza, 725 Kapiolani Blvd., Apt 1802, Honolulu, HI is the premises to be searched and is further described as:

> Apartment is located on the eighteenth floor of the Imperial Plaza. The apartment has two bedrooms, two bathrooms, a living room and a kitchen. The front door to the apartment is off white in color and is affixed with the numerals 1802.

SEON IL KIM's business address, also known as KENKOGEN, located at 2250 Kalakaua Ave., #211, Honolulu, HI is the second premises to be searched and is further described as:

> B) A business suite located on the second floor in Suite 211. The front of the business is comprised of glass windows and a double glass door. The Kenkogen business is located between Seaside and Kalakaua. There is U.S. mail, addressed to SEON IL KIM,, on the floor near the entry way to the office.

## ATTACHMENT B
## PROPERTY TO BE SEIZED

The following items constitute evidence of the subject offenses in that they relate to and will establish the depth of the criminal activity, document the dispensing of misbranded and violative prescription drugs and/or controlled substances and identify potential customers and/or physicians working with SEON IL KIM and KENKOGEN:

Prescriptions foreign and/or domestic;

Patient sales records for individuals ordering the pharmaceuticals;

Patient records and/or the lack thereof;

a. Correspondence between SEON IL KIM, his employees, and principals and pharmaceutical companies engaged in the sale of pharmaceutical and/or controlled drugs;

b. Employee personnel files and records, non-disclosure contracts; and

c. Computerized equivalents of the above records;

The following categories of records are evidence in that they will establish the current locations of funds received and spent by this business, officers, and employees as a result of the sale of misbranded drugs and/or controlled substances;

Bank records, to include all savings and checking accounts, canceled checks, deposit tickets and items, all documentation submitted to financial institutions related to any financial transaction related to SEON IL KIM, his employees, and principals and computerized equivalents of the above records.

The following categories of items are evidence of or will likely contain evidence of the conspiracies to misbrand drugs, entry of goods by means of false statements, smuggling, and distribution of counterfeit goods:

All telephone records;

Appointment logs and calendars;

All rolodexes;

Any pharmaceutical, controlled or non-controlled and any substance deemed to be sold via the Internet that could be violative in nature;

All computers and computerized equivalents that are being utilized within the business;

All shipping records including United States Postal and all other common courier, including Federal Express and foreign postal services;

("DOCUMENT" as that term is used herein, means records, notes, letters, correspondence, claims forms, financial records, checks, ledgers, accounting papers, computer printouts, saved e-mail, information on computer hard drive and disk, computer input and output reports, and writings, and any other item of any type that conveys information.)

1. Any and all documents and materials relating to the purchase, sale, shipment, handling, distribution, use, or manufacturing of pharmaceutical drugs and/or controlled substances, including, but not limited to, bills, invoices, bills of lading, purchase orders, letters, notes, order forms and shipping documents;

Any and all property, including, but not limited to, checks, cancelled checks, check registers, ledgers, bank statements, account statements, deposit items, credit card processing equipment, and any other financial papers which relate to the purchase, sale, shipment, distribution, handling, advertisement, use, or manufacturing of pharmaceutical drugs;

Any and all telephone records, address books, telephone messages, telephone recordings, records of electronic facsimile or "faxed" transmissions, or other records showing communications with others which relate to the purchase, sale, shipment, distribution, handling, use, manufacturing, or advertisement, of pharmaceutical drugs and/or controlled substances;

In addition, my training and experience has shown me that individuals and/or businesses typically use computers to facilitate record keeping and to record business transactions. Therefore, I believe that SEON IL KIM might have used computers to facilitate illegal activities related to the interstate sale and distribution of pharmaceutical drugs and/or controlled substances. Accordingly, I request that the following be subject to this search and seized as evidence:

hh. Any and all information and/or data stored in the form of magnetic or electronic coding on computer media or on media capable of being read by a computer or with the aid of computer related equipment. This media includes network servers, back-up tapes and diskettes, hard drives, floppy diskettes, fixed hard disks, removable hard disk cartridges, tapes, laser disks,

2

video cassettes and other media which is capable of storing magnetic coding;
ii. Any and all electronic devices which are capable of analyzing, creating, displaying, converting, or transmitting electronic or magnetic computer impulses or data. These devices include computers, computer components, computer peripherals, work processing equipment, modems, monitors, printer, plotters, encryption circuit boards, optical scanners, external hard drives, and other computer related electronic devices;
jj. Any and all instructions or programs stored in the form of electronic or magnetic media, which are capable of being interpreted by a computer or related components. The items to be seized could include operating systems, application software, utility programs, compilers, interpreters, and other programs or software used to communicate with computer hardware or peripherals either directly or indirectly via telephone lines, radio, or other means of transmission;

The search procedure of the electronic data contained in computers or operating software or memory devices, whether performed on site or in a laboratory, or other controlled environment, may include the following techniques:

> surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files);
> "opening" or cursorily "scanning" the first few "pages" of such files in order to determine their precise contents;
> * "scanning" storage areas to discover and possibly recover recently deleted data;
> * "scanning" storage areas for deliberately hidden files; or
> performing key word searches through all electronic storage areas that are intimately related to the subject mater of this investigation.

This warrant and this search procedure specifically excludes a search of any kind of unopened electronic mail. No search of unopened electronic mail shall be conducted without a separate search warrant supported by probable cause. Appropriate efforts shall be made to minimize the disclosure of records and other information, which are not subject of this warrant.

Within 30 days of the seizure of any computer hardware, I will contact SEON IL KIM and his representative to return such hardware or will provide an update to the Court as to the status of the return of such hardware or of the necessity to retain such hardware as evidence. Appropriate efforts will be made to conduct this search procedure on site, if possible.